[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In 1997 the parties began cohabiting, they married on June 20, 1998 and had a child eleven months later on May 11, 1999. They separated on April 7, 2000 and on April 10, 2000, just eleven months after the marriage, the Husband filed for divorce. This relatively short relationship produced lengthy, bitter, contentious litigation over both custody and financial issues.
The Husband's complaint claimed a dissolution of marriage, joint legal and sole physical custody, child support, attorney's fees, an equitable division of marital assets, and other relief. The Wife filed an answer and cross-complaint claiming a dissolution of marriage, sole legal and physical custody, alimony, child support, an equitable division of property, attorney's fees, and other relief. A guardian ad litem was appointed for the minor child and a custody/visitation evaluation was conducted by the Family Services Unit of the court. After several court hearings over many pendente lite motions, an arrest, various contempt motions, DCF involvement, and Sec. 46b-15 restraining orders, the parties were fully heard on all issues over six days of trial.
The Husband is 37 years of age, in good health, and has a GED diploma. He is a self-employed manufacturer's representative in the security and fire protection industry currently earning $439.65 per week. He would appear to have a greater earning capacity, at least as high as the Wife's, but is probably temporarily limited by the fact his business is relatively new and he spends a great deal of time on family court proceedings. Now that these proceedings are behind him, his income should be comparable to that of the Wife. He currently lives with his mother, stepfather, sister, and the sister's 4-year-old child in his mother's small home. His expressed goal is to find another residence as soon as these proceedings are concluded.
The Wife is 39 years of age, in good health, and has a bachelor's CT Page 1953 degree in economics. She is a licensed insurance agent employed as an account manager by an insurance agency earning a weekly income of $757.69. During these proceedings, she moved into a residence — located on the same street only two doors away from the Husband's residence — which was purchased by her sister to whom she pays rent. The proximity of the residences, aside from the ostensible advantages, has only added to the raging conflict between the parties.
Christopher Frederick Waugh, issue of the marriage, now one and one-half years of age, was born to the wife on May 11, 2000. He is in good health, enrolled in a nursery school, and is described as happy, well-adjusted, and comfortable with both parents. Despite being exposed to some of the extreme, ongoing conflict between his parents, he is, as yet, apparently unaffected. By way of example of the conflict, testimony revealed that the child was exposed to physical tugs of war during the exchanges for visitation, that he witnessed several police interventions during disputes between his parents, and that yelling, screaming, the hurling of epithets and threats were a common occurrence in front of him. Civil communication between the parents, as well as the ability to compromise on the even the most rudimentary subject, is almost nonexistent. Notwithstanding the obvious love which the parents have for their child, if this warfare does not end, he undoubtedly will be scarred for life by their inappropriate behavior.
Both the Family Relations Counselor and the Guardian Ad Litem recommended joint legal and physical custody of Christopher. They further recommended that final decision making authority be left with the Husband. While more investigation is needed, from the evidence presented to date, he would appear to be the more rational parent to make the final decision on disputed issues. At trial, the Wife presented her self as lacking insight into her own emotional problems, possessed of extreme anger for what she perceives her spouse has done to her, and, as a result, is unable to foster a relationship between father and son. The temporary parenting orders entered herein are to continue until April 30, 2001, or further order of the court, at which time the court will make further orders as the circumstances require.
Well into their thirties when they started to cohabit, the parties had each accumulated assets, the Wife substantially more than the Husband. Some of the assets were commingled. At the time of the marriage, the Wife had the following assets and liabilities:
• a half interest in a house in Shelton purchased jointly with the Husband during the cohabitation period; CT Page 1954
• a `91 Stanza automobile since replaced by a 2000 Nissan Altima;
• a 79 MG automobile;
• household furnishings, clothing and personal effects;
• a CITIBANK savings account of approximately $30,000.00;
• two CD's of approximately $5,000.00;
• various IRA's, 401k plans, and other retirement benefits approximating $40,000.00.
• a pending negligence action which resulted in a net settlement of approximately $67,000.00 (a portion of which was used to purchase the Shelton house) shortly after the marriage;
• a 10% interest in Pain Management, Inc. of no value;
• a claim for milage reimbursement;
• little or no debt.
The Husband had the following assets and liabilities at the time of marriage:
• a half interest in a house in Shelton purchased jointly with the Wife during the cohabitation period;
• a 401k plan with approximately $22,000.00 (a portion of which was used to purchase the Shelton house);
• credit card debt under $5,000.00;
• a deficiency judgment in favor of the VA in the amount of $7-9,000.
The house in Shelton was purchased before the marriage with a $44,500.00 down payment, $12,000.00 of which came from the Husband and the balance of $32,500.00 from the Wife. Both parties contributed time, money, and physical effort to improve the property during the time they owned it. It is not possible to sort out the monetary value of those contributions.
The sale of the residence netted approximately $66,000.00 which was CT Page 1955 placed in an escrow account pursuant to court order. Disbursements from the account were ordered by the court to pay the guardian ad litem and various other bills totaling $9,345.00. Contrary to the court order, the Wife removed $10,000.00 which she used to purchase a new car. The current balance in said account is $49,453.00.
At the time of trial, the assets of the parties had changed from those brought into the marriage. Both financial affidavits reflect those assets although they differ somewhat in the figures. One of the major assets acquired was a building lot in Bethany, Connecticut which is currently on the market for sale.
At trial, the Husband listed debts to 1St USA Master Card (business) in the amount of $7,000.00, Cohen and Thomas (legal fees) in the amount of $6,500.00, Discover Card (personal) in the amount of $2,500, and Justin Stanley (architect) in the amount of $1,000.00. The Wife listed Dinan and Dinan, P.C. (legal fees) amount unknown, USAA Master Card (personal) in the amount of $3,000.00, Citgo Plus (personal) in the amount of $150, Jean Vitarius (sister) in the amount of $1,400.00, Joan Vitarius (mother) in the amount of $2,500.00, Rita Moore (guardian ad litem) in the amount of $934.00, and John Major (former counsel) in the amount of $2,800.00. The architect bill was for services rendered in designing a residence, never built, on the Bethany lot.
It would serve no useful purpose to chronicle the causes for the breakdown of marriage which is clearly irretrievable. The marriage was one between an aggressive, goal-oriented woman and a passive, casual man. The Husband claimed it was the Wife's constant yelling, screaming, threatening, and arguing that caused the breakdown. He believes she has serious emotional problems including excessive attention to cleanliness. The Wife claimed the Husband was physically abusive to her and the child, abused alcohol and drugs, may have been unfaithful, told her repeatedly that he did not want the baby, smoked or permitted second hand smoke around the child who was prone to middle ear problems, had poor parenting skills, diet and cleanliness habits, did not have proper religious practices, was irresponsible, lazy and a poor dresser. She repeatedly claimed, and used as one reason why she should have sole custody, that he never wanted their child who apparently was not planned.
While there are two sides to every marriage breakdown, and perceptions always vary, there appears to be little merit to most of the Wife's claims. It became obvious to the court that the parties are simply two very different people different backgrounds, educational levels, goals, viewpoints, personalities, parenting methods — who probably should CT Page 1956 never have married. Sadly, these differences in this dysfunctional marriage were played out on the stage of the divorce process. Because of the very young child they brought into this world, they urgently need professional assistance to help them develop strategies to better communicate regarding issues pertaining to him.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
DISSOLUTION OF MARRIAGE
The marriage is dissolved on the grounds of an irretrievable breakdown.
CUSTODY AND VISITATION
Joint legal and physical custody of the minor child is awarded to the parties. Day to day decisions shall be made by the parent in whose care the child is in at the time. Regarding major decisions, such as residence, health care, and education, the parties shall consult with one another prior to any decision being made. In the event of a dispute, The Husband's decision shall be controlling. The parenting plan is as follows:
1. The child shall be with the Wife from Monday afternoon through Wednesday morning.
2. The child shall be with the Husband from Wednesday afternoon through Friday morning.
3. The parties shall alternate the weekends from Friday afternoon until Monday morning.
4. All pickups and drop offs shall occur at the child's day care facility.
5. Neither parent shall be present for the pick up or drop off at the day care facility.
6. The parties shall share all legal holidays and the child's birthday.
7. Mother's Day and Father's Day shall always belong to the appropriate CT Page 1957 party regardless of the regular schedule.
8. There is to be no smoking in the child's presence nor is he to be exposed to second hand smoke.
9. The Wife shall have the sole responsibility for decisions concerning religious training after prior discussion with the Husband.
The parties are each ordered to immediately undergo a psychological evaluation by a clinical psychologist mutually agreeable to them. In the event they are unable to agree, the guardian ad litem is to select the psychologist. The cost for the evaluation is to be equally shared. The evaluation is to include a psychological profile of each party, with special emphasis on parenting abilities. The final report is to be forwarded to the Family Services Unit one week prior to April 30, 2001 and shall be available to the parties and their counsel.
The parties are further ordered to immediately undertake communications counseling, with a therapist to be mutually agreed upon, on a weekly basis, for the purpose of improving their communications skills as they relate to the rearing of their minor child. In the event they are unable to agree upon a therapist, the guardian ad litem shall make the selection. The cost is to be equally shared. A report on their attendance and cooperation shall be forwarded to the Family Services Unit one week prior to April 30, 2001 and shall be available to the parties and their counsel.
The Family Services Unit shall continue to supervise this matter until the next court date and shall furnish the court with an updated evaluation on April 30, 2001.
The balance of the fees due the guardian ad litem, found to be $5,716.00, are to be equally shared and paid in full prior to the next court date.
In the event the parties arrive at an agreement which they wish to present to the court prior to the appointed day, they must file an appropriate motion with the court.
Wilful violation of these orders by either party will be severely dealt with by the court.
CHILD SUPPORT
Each party shall have the sole obligation of supporting the child while CT Page 1958 he is with him or her. All day care expenses shall be equally shared.
LIFE INSURANCE
Each party shall name the minor child beneficiary on any group life insurance that might become available to him or her without cost as a result of employment. Annually, the parties shall exchange satisfactory evidence that the insurance is being properly maintained. This paragraph shall be subject to modification.
MEDICAL INSURANCE
The Wife shall maintain the medical insurance coverage she currently has available at her place of employment for the benefit of the minor child. Any cost for the child's portion of said medical insurance, as well as all un-reimbursed medical, dental, prescriptive drugs, and psychological expenses incurred by the child shall be equally shared. The provisions of Conn. Gen. Stat. Sec. 46b-84(b) shall apply. This paragraph shall be subject to modification.
REAL ESTATE
The Bethany lot shall be immediately listed for sale at a listing price and with a broker to be mutually agreed upon between the parties within one week from date. If the parties are unable to agree, the listing agent shall be the current listing agent at the Beazley Agency and the listing price shall be $149,900.00. The parties shall accept the first reasonable offer within 3% of the listing price. In the event the property is not sold within 90 days, the listing price shall be reduced by 3%, and by an additional 3% every 90 days thereafter until sold. The parties shall reserve the right to agree in writing to forego any reduction in the listing price. Net proceeds of sale, defined as gross selling price less balance on the first mortgage, real estate commission, customary closing costs, and the debt owed to the architect Justin Stanley LLC, shall be equally shared. From the Husband's share, he shall pay to the Wife $2,525.00 as reimbursement for one-half of guardian ad litem fee advanced from the Citibank Savings account. Until sold, the parties shall equally share all costs of maintenance as well as all allowable deductions concerning said property. The court shall reserve jurisdiction to determine any dispute regarding the listing and sale of the property.
ALIMONY
No alimony is awarded to either party. CT Page 1959
PERSONAL PROPERTY
The Wife shall transfer to the Husband her interest in the 1979 MG subject to all property taxes concerning said vehicle.
The Husband shall retain the 1999 Nissan Altima subject to the outstanding loan and all property taxes concerning said vehicle.
The Wife shall retain the 2000 Nissan Altima subject to the outstanding loan and all property taxes concerning said vehicle.
The parties are ordered to mediate their differences regarding furnishings and other tangible personal property with the Family Services Unit of the court within 30 days from date. In the alternative, or if they successfully mediate their differences, they may file a written agreement, signed by both parties, within the same time period, describing a complete division of said items in a manner satisfactory to both. In the event there is no written agreement, and mediation is unsuccessful, the matter by motion shall be placed on the short calendar for disposition by the court within 60 days from date. Failure to address the personal property as aforesaid will result in a disposition of said property as follows: each party shall retain what they have in their possession and control without any further claim from the other.
The Wife shall retain her interest in Pain Management, Inc. and her National Guardian milage reimbursement.
The balance in the CITIBANK escrow savings account shall belong to the Wife.
Each party shall retain the remaining checking and savings accounts in their respective names.
RETIREMENT ASSETS
The Wife shall retain all pension and retirement assets shown on her financial affidavit without claim from the Husband.
LIABILITIES
The Justin Stanley LLC debt shall be paid from the Bethany lot net proceeds of sale as previously noted.
The fees due the guardian ad litem shall be paid equally by the parties as previously noted. In the real estate paragraph above, the court CT Page 1960 ordered a reimbursement to the Wife for one-half of the guardian ad litem's fees which were advanced from the Citibank account pursuant to court order.
Each party shall be solely liable for the remaining liabilities shown on their respective financial affidavits.
COUNSEL FEES
Each party shall be responsible for their own counsel fees.
TAXES
By April 15 of each year, until there is no longer any financial obligation for child support, the parties shall exchange their complete IRS returns in order to determine that the payments are appropriate under the circumstances then existing.
The parties shall alternate the dependency exemption for the minor child with even-numbered years belonging to the Wife and odd-numbered years to the Husband.
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein.
All pendente lite orders are to be made current to this date.
Plaintiff's counsel shall prepare the judgment file, have it certified by defendant's counsel, and file it with the court within 30 days.
CUTSUMPAS, J.